ACCEPTED
03-15-00270-CV
6631778
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/24/2015 10:32:35 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00270-CV

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/24/2015 10:32:35 PM
JEFFREY D. KYLE
Clerk

SUZANNA ECKCHUM

Appellant,

v.

THE STATE OF TEXAS FOR THE PROTECTION OF HAL KETCHUM

Appellee.

**On Appeal from the County Court at Law #2,
Comal County, Texas, Cause No. C-2014-1690C,
the Honorable Charles A. Stephens, Judge Presiding**

**BRIEF OF APPELLANT**

Mysha Lubke
BAKER BOTTS L.L.P.
State Bar No. 24083423
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
(512) 322-2500
(512) 322-2501 (fax)
mysha.lubke@bakerbotts.com

ATTORNEY FOR APPELLANT SUZANNA ECKCHUM

Active 20386168.3

**TABLE OF CONTENTS**

                                                                    **Page**

Table of Authorities ................................................................................ iv

Identity of Parties and Counsel ............................................................. viii

Statement on Citation to the Record ......................................................... x

Statement Regarding Oral Argument ....................................................... xi

Statement of the Case ............................................................................. xii

Issues Presented .................................................................................... xiii

Introduction ..............................................................................................1

Statement of Facts .....................................................................................3

    I.    The parties initially met in either 1994 or 1995, depending on
        who testified and when. ...............................................................3

    II.   The parties both moved to the Texas Hill Country in 2013 ..........4

    III.  The parties began running into each other at various locations
        in the Texas Hill Country in 2014 ...............................................5

    IV.  The evidence shows that the parties disagree as to when and
        where they encountered each other. ..............................................6

Summary of Argument .............................................................................14

Argument ................................................................................................16

    I.    Assuming the State properly requested a stalking protective
        order, the interaction between the applicable civil and
        criminal statutes required the State to prove the criminal
        offense of stalking occurred. ......................................................16

    II.   The evidence was legally and factually insufficient to show
        Hal was the victim of stalking ...................................................20

        A.   There is insufficient evidence to conclude that Suzanna
            knew her alleged conduct would result in Hal's fear for
            his life. .............................................................................22

        B.   There is insufficient evidence that Hal regarded
            Suzanna's alleged warning to him—"[M]ess with me and
            you will be sorry"—as threatening bodily injury or death ..................25

        C.   There is insufficient evidence that any reasonable person
            would view Suzanna's presence, especially with camera

and recording device, as a "scheme" of threatening
conduct directed "specifically" towards Hal.........................28

III. As applied to Suzanna, the statutory scheme at issue
unconstitutionally criminalizes protected speech. .....................32

IV. The trial court erred in a number of discretionary rulings,
which compounded, led to an unfair hearing and resulted in
this restrictive order. ...................................................................36

    A.   The trial court erred in granting a protective order based
on false testimony in violation of Suzanna's due process
rights..........................................................................................36

    B.   The trial court further erred in granting relief—
specifically, an order with a lifetime duration—that was
not requested in the application for protective order. .........42

    C.   The trial court erred in excluding testimony relevant to
Hal's allegations. ....................................................................46

    D.   The trial court erred in concluding that its order was
necessary. .................................................................................49

Conclusion and Prayer ...........................................................................51

Certificate of Compliance ......................................................................53

Certificate of Service .............................................................................54

Appendix ..................................................................................................55

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. State*,
218 S.W.3d 905 (Tex. App.—Beaumont 2007, no pet.) ...................................23

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ............................................................................20

*Cohen v. California*,
403 U.S. 15 (1971)............................................................................................33

*Connell v. Town of Hudson*,
733 F. Supp. 465 (D.N.H. 1990)......................................................................34

*Cunningham v. Parkdale Bank*,
660 S.W.2d 810 (Tex.1983).............................................................................42

*Daniels v. Funes*,
03-10-00317-CV, 2011 WL 2437692 (Tex. App.—Austin June 17, 2011,
pet. denied)..................................................................................................20, 21

*Ex Parte Chabot*,
300 S.W.3d 768 (Tex. Crim. App. 2009) .........................................................37

*Ex Parte Chavez*,
371 S.W.3d 200 (Tex. Crim. App. 2012) .........................................................37

*Ex parte Ghahremani*,
332 S.W.3d 470 (Tex. Crim. App. 2011) .........................................................37

*Ex parte Thompson*,
442 S.W.3d 325 (Tex. Crim. App. 2014) .........................................................34

*Finley v. Finley*,
02-11-00045-CV, 2015 WL 294012 (Tex. App.—Fort Worth Jan. 22,
2015, no pet.) ...................................................................................................36

*Franklin v. Benton-Elam*,
06-13-00126-CV, 2014 WL 1722165 (Tex. App.—Texarkana Apr. 30,
2014, no pet.) ..............................................................................24, 25, 26, 28, 29

*Garcia v. State*,
212 S.W.3d 877 (Tex. App.—Austin 2006, no pet.)..............................................33

*Gitlow v. New York*,
268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925)..............................................33

*Godfrey v. Godfrey*,
03-07-00220-CV, 2008 WL 3166328 (Tex. App.—Austin Aug. 8, 2008,
no pet.) ..............................................21

*Hunt v. State ex rel. K.C.*,
03-11-00352-CV, 2012 WL 3793283 (Tex. App.—Austin Aug. 31, 2012,
no pet.) ..............................................37

*In re Salgado*,
53 S.W.3d 752 (Tex. App.—El Paso 2001, orig. proceeding) ..............................................36

*In re Wean*,
03-10-00383-CV, 2010 WL 3431708 (Tex. App.—Austin Aug. 31, 2010,
no pet.) ..............................................51

*James v. Hubbard*,
21 S.W.3d 558 (Tex. App.—San Antonio 2000, no pet.) ..............................................36

*Long v. State*,
931 S.W.2d 285 (Tex. Crim. App. 1996) ..............................................17, 33, 35

*McGowan v. State*,
375 S.W.3d 585 (Tex. App.—Houston [14th Dist.] 2012, pet. ref d)..............................................22

*Molett v. State*,
05-08-00728-CR, 2009 WL 824761 (Tex. App.—Dallas Mar. 31, 2009,
pet. ref'd)..............................................44

*Moreno v. Moore*,
897 S.W.2d 439 (Tex. App.—Corpus Christi 1995, no writ) ..............................................42, 43

*Ortiz v. Jones*,
917 S.W.2d 770 (Tex. 1996) ..............................................21

*Red Lion Broadcasting Co. v. F.C.C.*,
395 U.S. 367 (1969)..............................................33

*Sanders v. State*,
 PD-0849-11, 2012 WL 1142360 (Tex. Crim. App. Apr. 4, 2012) .................... 22

*Scott v. State*,
 322 S.W.3d 662 (Tex. Crim. App. 2010) ......................................................... 34

*State v. Hanson*,
 793 S.W.2d 270 (Tex. App.—Waco 1990, no writ) ......................................... 33

*Teague v. State*,
 06-14-00053-CR, 2015 WL 2236642 (Tex. App.—Texarkana May 13,
 2015, no. pet. h.) ............................................................................................. 23

*Teel v. Shifflett*,
 309 S.W.3d 597 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ............ 42

*Uniroyal Goodrich Tire Co. v. Martinez*,
 977 S.W.2d 328 (Tex. 1998) ........................................................................... 20

*Wilson v. State*,
 448 S.W.3d 418 ............................................................................................... 34

**STATUTES**

Chapter 85 of the Texas Family Code ................................................................ 16, 43

Tenn. Code Ann. § 36-3-605 ...................................................................................... 7

Tenn. Code Ann. § 39-17-315 .................................................................................... 7

Tex. Crim. Proc. Code §7A .................................................................... 1, 16, 42, 46

Tex. Crim. Proc. Code §7A.01(a)(1)(2) .............................................................. 16, 17

Tex. Crim. Proc. Code §7A.03 ................................................................................. 45

Tex. Crim. Proc. Code § 38.46 ................................................................................. 47

Tex. Fam. Code Ann. § 82.008 ................................................................................. 38

Tex. Fam. Code §71.001 *et seq* ............................................................................. 16

Tex. Fam. Code § 71.004(1) ..................................................................................... 44

Tex. Fam. Code §71.0021(b) ...................................................................44

Tex. Fam. Code § 85.001 ...............................................................16, 43, 44

Tex. Fam. Code §85.021 ..........................................................................45

Tex. Fam. Code §85.025(a)(1)...................................................................45

Tex. Pen. Code Ann. § 22.01 ....................................................................44

Tex. Pen. Code §25.07 .............................................................................32

Tex. Pen. Code §42.07(a)(2).....................................................................18

Tex. Pen. Code § 42.072 .......................................1, 14, 19, 20, 22, 34

**OTHER AUTHORITIES**

Senate Bill 82 Bill Analysis Acts 2011, 82nd Leg., ch. 591 (S.B. 82), § 3.............47

Tex. R. App. P. 43.2(b) ............................................................................51

Tex. R. Civ. P. 301 ..................................................................................42

U.S. Const. amend. I ................................................................................32

NO. 03-15-00270-CV

_____

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

_____

SUZANNA ECKCHUM

Appellant,

v.

THE STATE OF TEXAS FOR THE PROTECTION OF HAL KETCHUM

Appellee.

_____

**On Appeal from the County Court at Law #2,
Comal County, Texas, Cause No. C-2014-1690C,
the Honorable Charles A. Stephens, Judge Presiding**

_____

**IDENTITY OF PARTIES AND COUNSEL**

Pursuant to Texas Rule of Appellate Procedure 38.1(a), Appellant Suzanna Eckchum provides this list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel in *Eckchum v. The State of Texas for the Protection of Hal Ketchum*, No. 03-15-00270-CV on Appeal from the County Court at Law #2, Comal County, Texas, Cause No. C-2014-1690C, the Honorable Charles A. Stephens, Judge Presiding:

| *Appellant:* | *Appellee:* |
|---|---|
| Suzanna Eckchum | The State of Texas for the Protection of Hal Ketchum |

*Counsel for Appellant in this Court:*

Mysha Lubke
Baker Botts L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701

*Counsel for Appellant below:*

Lynne Berry Morris
P.O. Box 1343
Wimberley, Texas 78676

*Counsel for Appellee in this Court:*

Office of Jennifer A. Tharp
Comal County Criminal District Attorney
150 N. Seguin, Suite 307
New Braunfels, Texas 78130

*Counsel for Appellee below:*

Nick Robinson
Office of Jennifer A. Tharp,
Comal County Criminal District Attorney
150 N. Seguin, Suite 307
New Braunfels, Texas 78130

**STATEMENT ON CITATION TO THE RECORD**

The record on appeal consists of a four-volume Amended Reporter's Record filed in July 2015 (cited as volume number, the abbreviation "RR," followed by the page number, e.g. 2RR103); a one-volume Clerk's Record filed in February 2015 (cited as "ICR," followed by page number); a one-volume Supplemental Clerk's Record filed in March 2015 (cited as SCR, followed by page number); a one-volume "Third Supplemental Clerk's Record" filed in May 2015 (cited as 3SCR, followed by page number); a one-volume "4th Supplemental Clerk's Record" (cited as 4SCR, followed by page number); a Second Supplemental Reporter's Record (cited as 2SRR, followed by page number); and an anticipated additional supplemental reporter's record which has yet to be properly filed with the clerk of the court. In accordance with Tex. R. App. P. 34.6, Appellant made multiple requests for this anticipated supplemental reporter's record that would include additional proceedings omitted from the Second Supplemental Reporter's Record at the motion for new trial hearing. 4SCR4-33. This supplemental reporter's record is forthcoming and has not been cited herein.

**STATEMENT REGARDING ORAL ARGUMENT**

This case involves the constitutionality and interpretation of criminal statutes under which a civil protective order was entered, which prohibits Appellant from exercising her First Amendment rights for the rest of her lifetime. Because of the complexity inherent in parsing the statutory language at issue here, and because of the permanent effects on Appellant of the trial court's interpretation of relevant statutes, Appellant believes the Court will benefit from oral argument. Further, the facts of this case are unusual, and the Court would benefit from an explanation of the factual effect of the improvidently granted protective order. Additionally, this case is being brought after Appellant qualified for pro bono appellate representation by a volunteer attorney through the Third Court of Appeals Pro Bono Program. For all of these reasons, Appellant requests oral argument.

# STATEMENT OF THE CASE

*Nature of the Case*:  The State of Texas for the Protection of Hal Ketchum filed an application for a family violence protective order, alleging that Appellant, with no familial or dating relationship to Hal, had been subject to a prior restraining order, stalked Hal over a 16-year period, and committed violence against him.

*Trial Court*:  County Court at Law #2, Comal County, Texas, Judge Charles A. Stephens Presiding in Cause No. C2014-1690C

*Course of Proceedings and Trial Court's Disposition*:  The State's application for a family violence protective order resulted in a Temporary Ex Parte Protective Order, a Stalking Protective Order, and an Amended Stalking Protective Order. The trial court denied Appellant's motion for a new trial.

*Appellate Jurisdiction:*  The Court has jurisdiction. Appellant timely filed a notice of appeal, ICR24, after the trial court signed the Stalking Protective Order, ICR18-21, and Amended Stalking Protective Order 3SCR7-9. Appeal was perfected under Tex. R. App. P. 26.1.

# ISSUES PRESENTED

**Rendition Points**

1. Is the evidence presented at the protective order hearing legally and factually sufficient to support the trial court's entry of the lifetime Amended Stalking Protective Order?

   a. Was there legally and factually sufficient evidence that applicant was the victim of the criminal offense of stalking perpetrated by Appellant?

   b. Was there legally and factually sufficient evidence for the trial court's finding that the issued protective orders were necessary and appropriate for the protection of applicant and his family and household, or did the trial court abuse its discretion in making that finding?

2. Does the statutory scheme, permitting a civil lifetime protective order under Tex. Crim. Proc. Code §7A.03 when the court finds "there are reasonable grounds to believe" the criminal offense of stalking under Tex. Pen. Code § 42.07 has occurred, unconstitutionally infringe upon Suzanna's First Amendment rights?

**Remand Points**

1. Did the trial court abuse its discretion in conducting the due process hearing before entering this lifetime Amended Stalking Protective Order?

2. Did the State secure this protective order after knowingly or unknowingly presenting false testimony in violation of Appellant's due process?

**Modification Points**

1. Did the trial court err in crafting the provisions outlined in the Amended Stalking Protective Order, which results in significant restrictions on Appellant's liberties and states that the order "shall continue in full force and effect until the lifetime of either party?"

## INTRODUCTION

Based on what local musician and celebrity, Hal Ketchum, described as his "paranoid" fears, perceived "psychological warfare," and "instinct" that something was funny about Appellant Suzanna Eckchum, the State of Texas obtained a civil "stalking" protective order on his behalf. Hal's hyperbole resulted in an order prohibiting Suzanna—who is also a local musician and music journalist—from going within over half-a-mile of anywhere Hal could be found. More harmful to Suzanna, the ordered restrictions prevent Suzanna from frequenting music venues critical to her profession and limits her access to other locations near and around the small towns where the parties live, Fischer, Texas and Wimberley, Texas. More harmful yet, the order imposes these restrictions on Suzanna for the rest of her life.

This *civil* protective order was requested as a family violence protective order under the Texas Family Code, but heard and entered under a recently-enacted *criminal* statute, Tex. Crim. Proc. Code §7A, which permits a lifetime protective order if the applicant is the victim of stalking as that *criminal* offense is defined in Tex. Pen. Code § 42.072. The trial court erred in granting this protective order for three main reasons. First this order should be vacated because the evidence is legally and factually insufficient to support the trial court's findings that (1) Hal was the victim of the criminal offense of stalking and (2) the conditions specified

in its order were necessary and appropriate for the protection of Hal. Second, the trial court's application of these criminal statutes unconstitutionally infringes on Suzanna's right to free speech.

Third and finally, the trial court made multiple evidentiary errors during the protective order hearing, some of which resulted in violations of Suzanna's due process rights. In a *civil* hearing where Suzanna—who was accused of a criminal offense—has so few of the constitutional protections available to criminal defendants accused under these same criminal statutes, the trial court erred in granting this protective order based on testimony shown at trial to be false. The trial court also erroneously granted relief not requested in the application for protective order. Finally, the trial court improperly excluded evidence and argument on Suzanna's behalf, but relied on evidence not presented at trial. In sum, the trial court erred in concluding that its order was necessary for Hal's protection.

Compounded, these errors resulted in a lifetime civil protective order with significant restrictions on Suzanna's liberty that are wholly incongruous with the scant evidence of criminal stalking mustered by the State. For these reasons, this Court should vacate this protective order, or in the alternative, remand for a new hearing and modify the restrictions of this protective order pending re-hearing.

**STATEMENT OF FACTS**

For decades, Suzanna has worked in the music industry as a journalist, photojournalist, singer-songwriter, and radio host covering the thriving Central Texas singer-songwriter scene. 2RR79, 82-86; 114-115; Exs. 3-5. Despite a hip implant that limits her mobility, she continues to pursue her music-centric career, which has taken her to influential music capitals from Nashville, Tennessee to cities in the Texas Hill Country, where she performs at Wimberley's Cypress Creek Cafe. 2RR87, 114-115. And for 30 years, Hal Ketchum has been a musician and describes himself as "very successful." 2RR11-12.

## I. The parties initially met in either 1994 or 1995, depending on who testified and when.

Suzanna first met Hal in August 1994 when she was working as a staff writer for a newspaper in Colorado and was assigned to interview Hal, who was performing at a county fair. 2RR67-68; Ex. 1[1]. Over the course of the next few years, while pursuing her own music, Suzanna interviewed and photographed many musicians across the country, including Hal, for newspapers. 2RR68-70, 78; Exs. 2, 6.

But Hal doesn't remember it that way. Instead, he characterizes Suzanna as a fan he had very little recollection of, but to whom he gave an autograph at a

---

[1] At the time Suzanna wrote the articles, her last name was Eckert. *See* Exs.1-2. After Suzanna's divorce and her ex-husband's marriage to a woman who shared Suzanna's name, she chose the professional name that currently uses. 2RR77-78.

3

"meet-and-greet. *See* 2RR24, 25-27. There, Suzanna's presence at the back of a line sent a "little red flag up" in Hal's mind. *Id.* He claims that one meet-and-greet (which Hal alleged occurred in 1995 perhaps—a year *after* Suzanna's interview of Hal was published in 1994) was the only time he ever met her. 2RR24, 27. And since then, Hal claims that Suzanna has stalked and followed him across the country for 16 years in contravention of a "restraining order"[2] he claimed to have obtained against her in Nashville in 1997 after police stopped her when he reported her to the police for going through his mailbox. ICR8, 2RR13, 24, 27-28, 30, 101.

## II. The parties both moved to the Texas Hill Country in 2013.

Contrary to Hal's claims, Suzanna had not seen Hal from 1997 until after she moved to Wimberley from New Braunfels, Texas in 2014. 2RR82-83, 112. By January 2013 Suzanna was already living in Wimberley and later began working on a music-centric radio show. 2RR 106-07; 112. Leaving a residence she shared with a friend, Suzanna moved alone to an RV on Fischer Store Road in August 2013. 2RR82-86, 112; Exs. 3-5. This road extends about seven miles west of Suzanna's residence ending at the Fischer Store Museum and Fischer Haus/Cantina in Fischer, Texas. 2RR15, 38, 62-63, 89-90. The Fischer Haus/Cantina is a music venue located near the museum, but is a separate property

[2] As discussed in Section IV.A, *infra*, Hal admitted this "restraining order" was merely a police report. It was not offered into evidence.

with owners different from the owners of the museum. 2RR62-63. There, Hal has lived on a portion of the property with the same physical address as the Cantina since October 2013—two months *after* Suzanna had already moved to Fischer Store Road. 2RR15, 62-63, 89; ICR8.

Fischer Store Road is the major thoroughfare between the main square of Wimberley and Fischer, Texas. *See* 2RR36-37. As such, it is the only way for Suzanna to go from her rural residence on the road, to conduct work or any business or errands in Wimberley. *Id.* It's also Hal's preferred route into Wimberley. *See* 2RR36-37. Since Suzanna's RV is halfway between Hal's residence and Wimberley, Hal frequently passes by Suzanna's residence going to and from town. 2RR36-37.

## III. The parties began running into each other at various locations in the Texas Hill Country in 2014.

With the parties living on the same road and working in the same industry in the same small town, it is no surprise that their paths eventually crossed again. But one encounter on January 12, 2014 at a music venue stood out in Suzanna's memory. On that day, Hal accosted her, cursing at her with clinched fists and threatening to kill her. 2RR90-94. While on her phone and walking away from Gruene Hall, a local music venue, Suzanna heard Hal yell from behind her to "get off her f---ing phone." *Id.* at 92. Standing there with his wife and 17-year-old daughter, Hal threatened to kill Suzanna, calling her a "f---ing cunt" and a "bitch."

*Id.* Eventually, Hal's wife tried to restrain Hal as he blocked Suzanna's path. *Id.* at 92-93. And Hal's 17-year-old daughter begged Suzanna not to call the police before running into a nearby store fearing her dad would go to jail. *Id.* at 90. When Suzanna was able to pass, she notified an officer at the venue of the incident, and he later escorted her to her car. *Id.* at 93. Hal did not confirm or deny this incident. *Id.* at 47.

Instead, he and his wife allege a later, uncorroborated confrontation at that same venue on January 23, 2014. ICR8. There on that date, Hal claims Suzanna threatened his life by saying "mess with me and you will be sorry." *Id.*; 2RR17, 55. And Hal says that one statement—which was conditional because he doesn't mess with her, was the only time Suzanna threatened him. 2RR43-44-49-61. Hal's other allegations are that Suzanna "intimidates" him and his family, without ever having uttered any words, just by her presence and photography. *Id.*

## IV. The evidence shows that the parties disagree as to when and where they encountered each other.

Hal alleged a series of incidents beginning in January 2014 that he felt constituted stalking that boiled down to "he-said-she-said." Except, it was what Hal and his sole witness, his wife of 11-months, said on one hand, compared to what Suzanna and a number of neutral witnesses and documents (or Hal's lack thereof) proved on the other hand:

| Hal says[3]: | The record supports: |
|---|---|
| Instinct told him to be wary of Suzanna from the very first time he laid eyes on her in 1995, standing alone[4] in the back of a meet-and-greet line. ICR8; 2RR12, 25-27 | Hal and Suzanna met a year earlier when she interviewed him for newspaper articles which were published. 2RR67-70; Exs. 1-2. |
| On February 14, 1997, he obtained a restraining order against Suzanna in Nashville based on the Tennessee anti-stalking statute implemented on his behalf. 2RR15, 24, 30; ICR8. The order permitted him to show a picture of Suzanna to the police and tell authorities not to let her into his shows. 2RR14. | Hal never obtained a restraining order against Suzanna. 2RR28. While the Tennessee stalking criminal offense was implemented in 1992, Tenn. Code Ann. § 39-17-315, there was no statute permitting protective orders for stalking until 2005—eight years after Hal claimed to have obtained an order. Tenn. Code Ann. § 36-3-605; 2005 Tennessee Laws Pub. Ch. 381 (S.B. 645), attached as Appendix 1. Prior to the Amended Order, Suzanna had never been served with a restraining order. 2RR89. |
| Hal saw Suzanna only once in 1994. 2RR31. Suzanna has stalked him for 16 years. 2RR14, 19 | The parties had no contact and did not see each other between 1997 and 2014. *See* 2RR27, 29-30, 43-44, 83. |
| Suzanna has followed Hal to every city where he moved from Nashville to Austin, and finally to the Wimberley-area. ICR8; 2RR15. | Hal moved to Tennessee in 1991, and Suzanna moved in 1995. 2RR79. He does not remember when he moved from Tennessee, 2RR40, or to Austin, 2RR41. But he moved to the Wimberley-area in October 2013. ICR8. Suzanna moved to Wimberley before him—in January 2013. 2RR112-113. |

[3] For purposes of simplifying this summary, only "Hal" refers to testimony provided by both Hal and his sole witness, his wife, Andrea.

[4] In his affidavit, Hall alleged that Suzanna was in the meet-and-greet line for an autograph "and that was it." ICR8. But at trial, Hal appended a story that Suzanna was in line for an autograph and picture with her young son, who, in later years, Suzanna sent to Hal's shows as a "little messenger" to bother Hal. 2RR12, 50-51.

| Hal says: | The record supports: |
|---|---|
| At Gruene Hall on January 12, 2014, Suzanna "showed up where he was." ICR8. Nothing else occurred on that date. *See id.;* 2RR46-47. | At that location, a shopkeeper witnessed Hal lunging at Suzanna, cussing, hollering, and screaming at her, while Suzanna calmly walked away from him and Hal's wife tried to restrain him back. (2RR at 71-75). This could only have happened on January 12, 2014. *See* 2RR87-89, 95. |
| At Gruene Hall on January 23, 2014, Suzanna jumped out of the bushes, 2RR16, or from behind cars, 2RR54-55, (depending on whether Hal or his wife was testifying) at Hal's family. She then allegedly threatened Hal's life by telling Hal that if he messed with her, he would be sorry, and formed a pistol with her fingers. 2RR16-17. | Suzanna was in the hospital on this date. In fact, from January 15, 2014 to May 2014, Suzanna was in the hospital, a rehabilitation facility, or homebound, recovering from a hip implant—which would preclude her from "jumping" anywhere. 2RR87-89; 113-114. She could not drive or walk during that period. *Id.* |
| On 6 occasions from January to May 2014, Suzanna "showed up" where he was. ICR8; 2RR18. | Suzanna was hospitalized for or rehabilitating from a hip implant from January 15 to May 2014. 2RR87-89, 95. |
| Around April 2014 at Gruene Hall, Hal's wife locked Hal's 17-year-old daughter in a truck to keep Suzanna away from the daughter. Then, Suzanna appeared outside the truck. 2RR58-59. | Suzanna was hospitalized for or rehabilitating from a hip implant from January 15 to May 2014. 2RR87-89, 95. |
| Suzanna follows him on Fischer Store Road to and from Wimberley's commercial center. | Suzanna and Hal live on the same road—the road both use to travel from their residences to Wimberley. 2RR36-37, 65-66. |
| At a music event, "Wag Fest," Suzanna "bothered" Hal simply by attending, wearing large headphones and talking into a voice recorder "mimicking" him during his performance. ICR8; 2RR45-46. Hal was "intimidated" by this behavior. *See id.* | Suzanna attended Wag Fest to conduct interviews for the Wimberley Valley Radio. 2RR45-46, 90, 97. She wore headphones and spoke into a voice recorder to record sound bites for her radio show. *Id.* |

In addition to those contradictions, the evidence also showed that Hal's affidavit omitted or exaggerated key facts. For example, Hal's affidavit stated that Suzanna followed him to Wimberley and lived "blocks away" from his home which gave the illusion that Suzanna chose to live very near to where he was already living. *See* ICR8. Besides the fact that Suzanna moved to Wimberley months *before* Hal actually. 2RR112-113; Ex. 5, Hal stated at the hearing that her residence was "three miles" away, not "blocks away." ICR8; 2RR15. In reality, the distance from Hal's residence to Suzanna's residence is seven miles. 2RR89. He also claims that when Suzanna made a shooting motion while instructing him not to mess with her, his daughter ran away scared, omitting the reason why his daughter was scared. ICR 8. This omission gave the illusion that his daughter "was so intimidated and frightened by this woman," Suzanna. 2RR17. But what his 17-year-old daughter[5] was afraid of was Hal going to jail so much that she did not want to leave the scene with him. 2RR73, 75. He also claims that in November 2014, Suzanna sat at the Fischer Store near his residence and took photos, without stating the subject of the photos. ICR8; 2RR18. The omission gives the illusion that Suzanna went to Hal's home to take photos of him, his family, or his residence. But Hal's wife acknowledged that Fischer Store is a

---

[5] This daughter, Rose Ketchum, was present at trial, sworn in, and sequestered, but never testified. 2RR10, 66. Thus, the only testimony of why the daughter was afraid was admitted with no objection and provided by a neutral, third-party witness—the shopkeeper who managed the shop in which Hal's daughter ran during the incident . 2RR73-75.

9

separate property from the property on which the family lives. 2RR62-63. Suzanna took pictures of the venue itself while interviewing the owner of the venue—not Hal or his home. 2RR89-90. Finally, he alleged that Suzanna took pictures of his grandkids and family, but failed to note that any such photos were taken of the audience at public events, and the children were a part of the audience. 2RR63-65.

In addition to those key omissions, Hal also frequently discredited his own testimony and affidavit. For instance, Hal testified that Suzanna had "continuously" harassed him from 1994 to 1997. 2RR29. But moments later, Hal concedes that he had not seen Suzanna from 1994 to 1997, and thus "really wouldn't know" if Suzanna was stalking him then. *Id.* Also, Hal stated in his affidavit that he was at Gruene Hall on January 23, 2014 (the date he alleges Suzanna threatened his life) because he was performing. ICR8. While at the hearing, he testified that he was there on that date just to have "a couple of beers," but was not intoxicated. 2RR16, 50. As another example, Hal described Suzanna as a fan he met once and whose name he didn't even know at the time, 2RR25, and had no recollection of meeting at a newspaper interview. *See* 2RR27. Nor did he know her name when he somehow obtained a "restraining order" against her three years later. 2RR25. But he later testifies that he did know her name and purportedly knew her young son. 2RR50-51. Finally, Hal claimed that since

January 2014, he calendared each date Suzanna followed him because a police officer to whom he reported the stalking advised him to track the incidents. 2RR47; ICR8. Yet, his affidavit stated that he did not report any "stalking" to any authorities until December 14, 2014—nearly 11 months after he claims a police officer told him to keep a calendar, nearly a year after he claims Suzanna threatened to kill him, and two days before he sought this protective order. ICR8. Additionally, Hal alleged a number of uncorroborated encounters only supported by Hal's own—oftentimes forgetful—testimony.[6]

Hal's allegations of "Suzanna following [him and his family] around and tak[ing] pictures all the time" concluded with his description of an event on December 14, 2014 where he claims Suzanna attended *his* event at the VFW "in an intimating [sic] nature." ICR8; 2RR44. At trial, he admitted that *he* was not the sole performer at the event, and the event was actually that of a local performer—Eppy the Clown—as a benefit concert. 2RR45-46; 98-99. While Hal alleged

---

[6] For example, at trial, Hal recounted incidents where Suzanna allegedly sent a young boy who Hal claims was her son to try to get backstage access to Hal's shows. 2RR50-51. Despite knowing no dates or locations or how many times this occurred, he insists these things happened. *Id*. at 52-53. According to Hal, the next time he claims he saw Ms. Eckchum was when she appeared on his lawn in 1997 at his home in Nashville, Tennessee. 2RR12-13. From the moment he met her, he claims she began showing up at his children's school, following him around the grocery store, and going through his mailbox in 1997. 2RR13. He saw Suzanna in Wimberley on December 7, 2014, and claims Suzanna took pictures of his grandkids in June and of his family in September. ICR8. He asserts that she followed his children at a school fundraiser and took pictures of his grandchildren. 2RR14. On December 7, 2014, he saw Suzanna in Wimberley following his daughter and her friends. 2RR18. He also saw her at the Ace Hardware store in town, and presumed Suzanna followed him there. 2RR58, 65.

Suzanna was there to "intimate" [sic] him, ICR8, the record shows that Suzanna attended the event to invite other musicians onto her radio show and also to take photographs for *The Wimberley View*, a local newspaper in which her photos were published the next day. 2RR99, 106-07; Ex. 6. On the day following this "incident," and nearly a year after he claims Suzanna threatened to kill him by forming a gun with her hand and telling him not to "mess" with her, Hal claims to have reported Suzanna's behavior to the Comal County Sherriff's office, "but do[es] not have the case number." ICR8.

The State then filed an application for a family violence protective order requesting Suzanna be prohibited from "removing children from Hal's possession" and "transferring, encumbering or otherwise disposing of any property owned or leased by Applicant and Respondent," as well as requesting that "temporary support and visitation be set," under the Texas Family Code. ICR4-7. The court granted that relief, and set a due process hearing before entry of a permanent order. *Id.* at 10-12. At that hearing and based on the thin accusations recounted above, the State of Texas convinced the trial court that Hal's life had been threatened and he was "frightened," scared, and afraid a bullet would enter his home. ICR8; 2RR15, 19. The trial court granted the protective order (and removed the family violence provisions) finding that (1) Hal was the victim of stalking and (2) the "Stalking Protective Order" was necessary and appropriate to prevent or reduce the

likelihood of future harm to Hal or a member of his family or household. ICR18-20. Aware of the small size of Wimberley, the court ruled that Suzanna should (1) stay 1,000 yards (over half-a-mile) from Hal and specified locations in Wimberley;[7] (2) not engage in any conduct that is reasonably likely to "harass, annoy, harm, abuse, torment, or embarrass" Hal or his family; (3) "look in the newspaper" before going to any music venue to ensure that she is not there three hours before or three hours after Hal is performing; and (4) essentially leave any location where she sees Hal. *See* 2RR117-121. The trial court expressed that it based this order on the evidence it heard about Suzanna "showing up, including other cities and places, where [Hal] is." 2RR121. After a hearing in which Suzanna's motion for new trial was denied, the court amended the order to decrease the stay-away provisions from 1,000 yards to 1,000 feet. 3SCR7-9. Both orders "shall continue in full force and effect until the lifetime of either party." ICR20; 3SCR9.

---

[7] After a hearing on Suzanna's motion for new trial, the trial court reduced the distances in the stay-away provisions to 1,000 feet. Appendices 2,4. As discussed in Sections III and IV.D *infra,* both distances significantly limit Suzanna's ability to live and conduct business in Wimberley. Appendix 3 is a map used for explanation only and that is not to scale or an accurate, legal representation of the physical property. It shows an example of a location prohibited in the protective order and other locations encompassed by the 1,000-foot radius specified in the stay-away provisions.

## SUMMARY OF ARGUMENT

The trial court improvidently entered this lifetime stalking protective order. The State's evidence showed that two residents of the same small town, both in the music industry, frequented the same music venues and events, and that "bothered" Hal. But none of that constitutes the offense of stalking, which based on the alleged facts, would require more than one knowing threat of bodily injury or death, along with objective and subjective elements of the accuser's fear. *See* Tex. Pen. Code § 42.072. At most, Hal alleged that Suzanna warned him not to "mess with her" and that that warning made Hal feel threatened in an incident the evidence shows could not have possibly occurred as Hal alleged. Whether or not Hal subjectively experienced "paranoid" fear when he saw Suzanna around town, under the stalking statute's objective prong, a reasonable person would not have feared death or bodily injury when Suzanna showed up to music venues with a camera, headphones, and a voice recorder, for example. In short, the evidence was not legally and factually sufficient to support entry of a stalking protective order—that endures for the rest of Suzanna's life—under the relevant statutory framework. The Court should vacate this order for this reason alone.

Additionally, the relevant statutory framework is unconstitutional as applied to Suzanna as it prohibits protected speech under the First Amendment for

the rest of Suzanna's life.  For this reason as well, the Court should vacate this order.

Finally, the trial court made a number of errors in conducting the due process hearing required before entry of a protective order.  First, in the application for a protective order and at the due process hearing, the State relied on false testimony which deprived Suzanna of due process required by law.  Then, the trial court granted relief that was not requested by the State by entering a stalking protective order when the State applied for a family violence protective order.  Further, at the due process hearing, the court excluded relevant testimony the legislature explicitly stated should be admissible.  Finally, in ruling, the trial court erred in relying on evidence not presented.  These errors resulted in a due process hearing that provided minimal fairness to Suzanna who was accused of committing a criminal offense, and as a result, is now subject to a civil order (enforceable by jail time) that restricts her liberty for the rest of her life.

For these reasons, this Court should vacate this improvidently granted Amended Stalking Protective Order ("Amended Order").  Alternatively, this Court should remand for a new due process hearing and modify the restrictions of the Amended Order pending a new hearing.

## ARGUMENT

**I.**     **Assuming the State properly requested a stalking protective order, the interaction between the applicable civil and criminal statutes required the State to prove the criminal offense of stalking occurred.**

Despite the State alleging no family or dating relationship between the parties, it requested this stalking protective order under Chapter 85 of the Texas Family Code. ICR4-7; 2RR7. Tex. Fam. Code § 85.001 permits issuance of a protective order if family violence has occurred and the parties are in a family or dating relationship. At trial (and for the first time), the State requested that the court issue a stalking protective order, which is *not* available under the Family Code, but is available under Tex. Crim. Proc. Code §7A. 2CR9; *see infra* Section IV.B. This chapter of the Code of Criminal Procedure is a recently-enacted, bare bones scheme for protective orders that relies on the Family Code to fill in administrative gaps, such as fee payment, notice, and time for hearings. *See* Tex. Crim. Proc. Code §7A; Tex. Fam. Code §71.001 *et seq*. It also relies on the Penal Code for descriptions of the unlawful conduct warranting a protective order. Tex. Crim. Proc. Code §7A.01(a)(1)(2).

The relevant provisions permit the State to file an application for a stalking protective order, without regard to the relationship of the parties, on behalf of a person who is the victim of an offense under specified Penal Code provisions, including the criminal offense of stalking. *Id.* at 7A.01. "At the close of a hearing

on an application for a protective order under this chapter, the court shall find whether there are reasonable grounds to believe that the applicant is the victim of...stalking" and issue a protective order with that finding. *Id.* at § 7A.03.

When issuing a protective order under this chapter, the court *may* order the offender to take any action the court determines is "necessary or appropriate to prevent or reduce the likelihood of future harm to the applicant or a member of the applicant's family or household." *Id.* at §7A.05(a)(1). The chapter also permits the trial court to enter a protective order with "stay-away" provisions for residences, work addresses, and schools, as well as provisions prohibiting possession of a firearm. *Id.* Finally, the protective order can include a provision prohibiting the accused from "engaging in conduct directed specifically toward the applicant [or his family or household], including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the person." *Id.* at § 7A.05(a)(2)(C).

This last permissive provision was once itself the criminal offense of stalking before it was held unconstitutional and revised multiple times to attempt cure the unconstitutional vagueness. *Long v. State*, 931 S.W.2d 285, 288 (Tex. Crim. App. 1996) (holding an earlier version of the stalking statute making it a crime to "engage[] in conduct directed specifically toward the other person, including following that person, that is reasonably likely to harass, annoy, alarm,

abuse, torment, or embarrass that person" to be unconstitutionally vague on its face).  The current revised stalking criminal offense provides:

> (a) A person commits an offense if the person, **on more than one occasion and pursuant to the same scheme or course of conduct** that is **directed specifically at another person**, **knowingly** engages in conduct that:
>
> (1) constitutes an offense under Section 42.07,[8] or that the actor **knows or reasonably should know** the other person will regard as threatening:
>
>> (A) bodily injury or death for the other person;
>>
>> (B) bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or

---

[8] One can also commit the crime of stalking by engaging in conduct that "constitutes an offense under Section 42.07," which is the crime of harassment.  As the State never alleged Harassment in its Family Code application for a protective order, to the extent the State still asserts that Harassment occurred, the challenges to legal and factual sufficiency outlined in this brief apply to the criminal offense of harassment as well.  This is because the only provision of the Harassment statute remotely applicable involves conduct that "threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member o the person's family or household, or the person's property."  *See* Tex. Pen. Code §42.07(a)(2).  The major difference in this case is that Harassment has a higher mental state of "intent to harass, annoy, alarm, abuse, torment, or embarrass" instead of knowledge that conduct would result in fear or the litany of emotional states in the Stalking statute. *See id.* at § 42.07(a)(1).

(C) that an offense will be committed against the other person's property;

(2) causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, **or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended**; and

(3) would cause a reasonable person to:(A) fear bodily injury or death for himself or herself;(B) fear bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship;(C) fear that an offense will be committed against the person's property; or (D) **feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended**.

Tex. Pen. Code Ann. § 42.072 (emphasis added).

In other words, to "stalk" Hal, Suzanna needed to do *any* conduct in which a person could possibly engage that *she knew* to a reasonable certainty would result in Hal believing she threatened bodily injury, death, or a property offense. *See id.*; *see also id.* §6.03 ("A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to

cause the result."). Additionally, that conduct should have resulted in Hal's subjective fear of the threat, or, a mere feeling of any one of the litany of low-intensity emotional states listed in the statute. *See id.* at §42.072 (listing harassed, annoyed, alarmed, abused, tormented, embarrassed, and offended as emotional states an accused could feel as a result of any conduct). Finally, Hal's fear, or, his feeling of any one of the listed emotions needed to be reasonable under an objective standard. *See id.* And to be entitled to a protective order for stalking, the State needed to prove that stalking occurred.

## II. The evidence was legally and factually insufficient to show Hal was the victim of stalking.

"A legal-sufficiency challenge to a protective order, like any other legal-sufficiency challenge, may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact." *Daniels v. Funes*, 03-10-00317-CV, 2011 WL 2437692, at \*6 (Tex. App.—Austin June 17, 2011, pet. denied) (citing *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). The Court must consider evidence favorable to the finding only if a reasonable fact-finder could, and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168

S.W.3d 802, 827 (Tex. 2005). "The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to make the finding under review." *Godfrey v. Godfrey*, 03-07-00220-CV, 2008 WL 3166328, at *1 (Tex. App.—Austin Aug. 8, 2008, no pet.).

In contrast, reviewing a finding for factual sufficiency requires the Court to weigh all of the evidence in the record and set aside the challenged finding if it is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Daniels*, 2011 WL 2437692, at *6 (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)).

This record establishes that Hal was not the victim of stalking because no reasonable and fair-minded person would find that Suzanna knew that her conduct would cause Hal to fear death or bodily injury. Nor would any reasonable person conclude that Hal was threatened by the only purported evidence of threatening conduct the State offered. Finally, even if there was a threat, there is a complete absence of evidence of the vital fact that threatening conduct occurred on more than one occasion and pursuant to a scheme or course of conduct. Thus, the trial court's finding that stalking occurred was contrary to the great weight of the evidence in the record, and this stalking protective order should be vacated.

**A.** **There is insufficient evidence to conclude that Suzanna knew her alleged conduct would result in Hal's fear for his life.**

Suzanna had no way to know that conducting her business in Wimberley, attending music venues, photographing and interviewing for newspapers and magazines, and making recordings for radio would result in Hal's fear of bodily injury or death. The criminal offense of stalking requires that the alleged stalker know the circumstances of her conduct as well as that her conduct would result in the alleged victim regarding the conduct as threatening death or bodily injury. *See* Tex. Pen. Code § 47.072 (defining offense as "knowingly engag[ing] in conduct that… [she] knows or reasonably should know the other person will regard as threatening"). A person has the requisite mental state when he "acts knowingly, or with knowledge, with respect to the nature of his conducts…[or] knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* at § 6.03(b).

"Knowledge...depends on what information the defendant possesses." *Sanders v. State*, PD-0849-11, 2012 WL 1142360, at *7 (Tex. Crim. App. Apr. 4, 2012). Cases applying the stalking criminal statute have held that the knowledge element was met where the accused was warned by friends and law enforcement about his conduct. *See, e.g., McGowan v. State*, 375 S.W.3d 585, 591 (Tex.

App.—Houston [14th Dist.] 2012, pet. ref d) (pointing to defendant's decision to ignore warnings from stepbrother and law enforcement officers as evidence of knowledge that stalking victim would regard his conduct as threatening bodily injury or death); *Allen v. State*, 218 S.W.3d 905, 909 (Tex. App.—Beaumont 2007, no pet.) (holding that jury could rationally conclude defendant's continued behaviors after a police warning to stop revealed a subjective awareness that he was causing the complainant fear); *Teague v. State*, 06-14-00053-CR, 2015 WL 2236642, at *12 (Tex. App.—Texarkana May 13, 2015, no. pet. h.) (holding that evidence that the complainant told the accused and the police, who in turn told the accused, that she was afraid of him supported the knowledge element of the stalking offense).

But this record is wholly devoid of evidence of what information Suzanna possessed. And the record does not show that Suzanna knew Hal or a more reasonable person would regard her conduct as threatening death or bodily injury. At most, Suzanna understood from others in her industry that Hal told others he had "ill feelings" toward her. 2RR98, 102. Hal never communicated to Suzanna that he felt threatened by her. *See* 2RR102. At some point, Suzanna learned that Hal's publishing company, run by Hal's then-wife, accused Suzanna of stalking after Suzanna pitched a photobook to his management company. 2RR30, 81-82. That fact was confirmed to Suzanna when the police stopped her

traveling by foot in her neighborhood and showed her a copy the contents of her proposed book which she had not given the police. *See* 2RR82-83, 14, 30. No witness testified that Suzanna had any knowledge that Hal felt threatened when he saw her at music venues.

Further, there was no indication from Suzanna's prior encounters with Hal that she knew Hal thought she would physically harm him. This is especially so considering that from when the parties met in 1994 to present, Suzanna has never physically harmed Hal or his family. *See Franklin v. Benton-Elam*, 06-13-00126-CV, 2014 WL 1722165, at *10 (Tex. App.—Texarkana Apr. 30, 2014, no pet.) (denying a stalking protective order because the respondent did not know and should not have known that the accuser would regard her conduct as threatening "especially since no physical harm had come to [the accuser] over the years"). And over the course of the 16 years Hal alleges Suzanna stalked him, Hal admits that she never made any threats against him other than the one he alleges occurred at Gruene Hall on a date Suzanna was incapacitated. 2RR43. And even that incident, where Hal alleges Suzanna threatened to kill him, would indicate to Suzanna and a reasonable person that Hal was not in fear as he pursued Suzanna aggressively while hurling insults at her. *See* 2RR16-17, 71-74.

In short, nothing Suzanna could have said or done indicated to a reasonable person that she knew Hal would reasonably experience fear of a threat from her conduct. Thus, the State's evidence of stalking was neither legally or factually sufficient to support the entry of this protective order.

**B.** **There is insufficient evidence that Hal regarded Suzanna's alleged warning to him—"[M]ess with me and you will be sorry"—as threatening bodily injury or death.**

There is no legally or factually sufficient evidence of Suzanna threatening Hal. Hal points to one conditional statement he alleges Suzanna uttered as the source of his fear of a "drive-by" because his "life has been threatened" and he was "scared for [his] safety and the safety of [his] family." ICR8; 2RR19-20. According to Hal, Suzanna said to him while pointing her finger, allegedly in the form of a gun: "[M]ess with me and you will be sorry." *See* I CR 8; 2RR17.

The only appellate case interpreting the stalking statute in the context of the lifetime protective order statute denied the application for a protective order due to a lack of credible evidence of stalking. *Franklin*, 2014 WL 1722165, at *10. There, for over three years, the applicant and respondent frequently encountered each other in the small town in which they both resided, mostly as a result of both being romantically involved with the same man. *Id.* at *1. These public encounters were not cordial and frequently involved name-calling, with the final encounter order resulting in actual physical violence, leading to the application for

a protective order. *Id.* During that encounter, video evidence showed the applicant engaged verbally with respondent while applicant exited a Dollar General store as the respondent entered. *Id.* at *3. The applicant changed course and went back to enter the store and further engaged the respondent. *See id.* While the applicant claimed that the respondent was the aggressor in a physical altercation and thus made a credible threat, neutral third-party witness testimony and video evidence showed the opposite. *Id.* It was the applicant, who advanced toward the alleged aggressor before physical violence ensued, while claiming to be in fear. *Id.* at *3. The trial court found, and the appellate court affirmed, that such conduct could not constitute a threat, because no reasonable person would conclude that the applicant—who walked toward and not away from the respondent during a verbal altercation—was in fear. *See id.*

Assuming Suzanna made the alleged warning to Hal during an incident at Gruene Hall, Hal could not have regarded the conditional statement as life threatening. Likewise, no reasonable person could conclude that Hal—who lunged and cursed at Suzanna—feared death or bodily injury. During the incident Hal alleges, Suzanna exited Gruene Hall and Hal soon followed. 2RR16. She appeared behind him, and Hal turned to tell her to leave him and his family alone. *Id.* Her response was to tell him to leave her alone or he would be sorry. *See id.*

Then he "went off on [Suzanna]" before ultimately leaving with his family. *Id.* at 17.

These self-serving statements are in direct contradiction to a neutral (and unwilling) witness who saw the altercation and spoke with Hal's "frightened" daughter during the encounter. 2RR71-74. This witness came to trial on her lunch break from a store near Gruene Hall where she was working the night she witnessed Hal "hollering and cussing," "saying ugly things," and "lunging" at Suzanna while Hal's wife tried to pull him back. 2RR71-72. All the while, Suzanna was calmly walking away with her back to Hal, while Hal continued following and lunging towards Suzanna. 2RR72. This testimony establishes that Hal could not have feared Suzanna's alleged threat because he pursued Suzanna, and not the other way around.

Further, at most, this "conditional" statement Hal alleges would be a warning of self-defense by Suzanna under the circumstances described by the neutral witness. The conditional phrase confirms that Suzanna promises to do nothing if Hal does not mess with her. And Hal agrees that it was conditional and claims that he does not "mess" with Suzanna. 2RR48-49. Therefore, even if one believes that Suzanna made this statement and the accompanying gesture to Hal (although the evidence showed she could not possibly have been present on the day Hal claims she made the statement) there is no legally or factually sufficient

evidence that Hal regarded the conduct as threatening. Further, even if this conduct was threatening, it at most constitutes one threat, when the stalking statute requires threatening conduct on more than one occasion. Because Hal alleged and proved no threatening conduct by Suzanna, the Court should vacate this protective order.

**C.** **There is insufficient evidence that any reasonable person would view Suzanna's presence, especially with camera and recording device, as a "scheme" of threatening conduct directed "specifically" towards Hal.**

Other than the non-threat discussed above, Hal alleged a series of "stalking" incidents where Hal saw Suzanna at public events and public places taking pictures, making recordings, or conducting her business. No reasonable person would view that conduct as a scheme or course of conduct directed specifically at Hal, knowing that the parties work in the same industry and live in the same small town where there was only one grocery store and one hardware store, facts of which the trial court was aware. *See* 2RR120. To the extent the trial court construed these chance encounters as credible evidence of threatening conduct directed specifically at Hal, the trial court erred.

The stalking offense requires that the threatening conduct be "pursuant to the same scheme or course of conduct that is directed specifically at another person." Tex. Pen. Code §42.072. In *Franklin*, the appellate court upheld the denial of a stalking protective order because there was no credible evidence of

purposeful conduct directed at the complainant. *See* 2014 WL 1722165, at *9.

There the two parties lived in a small town, and "the two happened to run into each

other at various locations within their shared community over the course of three

and one-half years." *Id.* The trial court "characterized the meetings established by

credible evidence as chance encounters rather than conduct occurring pursuant to

the same scheme or course of conduct." *Id.*

Likewise, the record disproves that Suzanna's presence at locations in

Wimberley was directed specifically toward Hal or his family, and instead was the

result of the two parties being acquainted in the same industry and living in the

same small town. This is so despite Hal's hyperbolic efforts to suggest that

Suzanna "followed" him and "showed up" at his shows. ICR8. For example, Hal

claims Suzanna attended *his* event at the VFW "in an intimating [sic] nature."

ICR8; 2RR44. The characterization of the event as his own suggested that Hal was

that "main event," and if anyone attended, it was to see him. But at trial, he

admitted that *he* was not the sole performer at the event, and the event was actually

that of a local performer—Eppy the Clown—as a benefit concert. 2RR45-46; 98-

99. While Hal alleged Suzanna was there to "intimate" [sic] him, ICR8, the record

shows that Suzanna attended the event, along with her radio producer, to invite

other musicians onto her radio show and also to take photographs for *The*

*Wimberley View*, a local newspaper in which her photos were published the next

day. 2RR99, 106-07; Ex. 6. This producer, who is also the president and acting general manager of the Wimberley Valley Radio, attended the event with Suzanna and testified that it was reasonable for Suzanna to be attending events to invite guests to her show. 2RR108. To interpret that behavior as stalking was what the witness found alarming. 2RR108-09.

Nor was Suzanna at Gruene Hall to follow or bother Hal. Both parties agree that they saw each other at Gruene Hall in January 2014, though they dispute the date. *Id.*; 2RR46-47, 87-88. In his affidavit, Hal explained his presence at that venue by stating that he had a concert to perform there on January 23rd. ICR8. Such an explanation suggests that if Suzanna was also there on that date (which she denies), she was there because she knew Hal would be there and to attend Hal's concert. *See id.* But at the hearing, Hal recalled that in fact, he was not at Gruene Hall to perform and did not have a concert that night. 2RR16. Instead, he was there to have a couple of beers (but maintains he was not intoxicated) after having celebrated a friend's birthday at a nearby restaurant. 2RR16, 50. This latter version of events suggests that if Hal and Suzanna were both at Gruene Hall on the date Hal alleges, Suzanna had no way to expect Hal to be there as well. Thus, the "life-threatening" incident Hal alleged on January 23rd was a result of two people in the same industry in the same small town being at the same place at

the same time, and not a result of Suzanna "showing up" at places where Hal performed.

As another example of Suzanna's conduct not being "specifically directed" at Hal or anyone else, the record shows that Suzanna attended an event called "Wag Fest" for reasons wholly unrelated to Hal. Suzanna does not deny being at the event or seeing Hal there, but she does deny that her reason for being there was Hal. 2RR90, 97. She attended with headphones and voice recorder in hand to make recordings and to interview other musicians for her radio show. *Id.* Yet, Hal claimed that she attended the event in an "intimidating" nature so much so that audience members around her began to leave "because they felt so strangely intimidated by this behavior." 2RR44-45. He also concluded that by sitting in the front row wearing her headphones and speaking into her voice recorder and laughing at a joke he made on stage (to which, he himself was laughing), she was "mimicking" him. 2RR44-45. Along with knowing the reason audience members arose from their seats, Hal also purported to know what Suzanna could hear while wearing her headphones, though he was wearing none.

Such thin accusations are not credible evidence that Suzanna directed a scheme or course of conduct specifically at Hal. . he feared death or bodily injury. At most, Hal alleged that Suzanna's "presence" and her "taking pictures" bothered him—not that she directed that conduct at him to threaten him. There is no

evidence that Suzanna directed her conduct specifically at Hal or his family to support a claim of stalking. Stalking did not occur, and the State did not prove it. Suzanna never threatened Hal or his family. 2RR99-100. She never made any gun gestures with her hand. *Id.* She has specifically directed no conduct at Hal. *Id.* She is not stalking Hal or his family. *Id.* For these reasons, this Court should vacate the Amended Stalking Protective Order which is not supported by legally or factually sufficient evidence.

### III. As applied to Suzanna, the statutory scheme at issue unconstitutionally criminalizes protected speech.

Additionally, the provisions of the stalking and protective order statutes are unconstitutional as applied to Suzanna to the extent they permit the trial court to enter a stalking protective order prohibiting Suzanna "from taking photos or images of applicant, applicant's children, spouse, grandchildren, or anyone in applicant's household." 3SCR8. Such provisions subject Suzanna to criminal liability under Tex. Pen. Code §25.07[9] and jail time, for example, should an audience member captured in one of her published photographs turn out to be a member of Hal's family or household. *See* 3SCR9. Moreover, Suzanna will be subject to such restrictions for the remainder of her or Hal's life.

---

[9] Tex. Pen. Code §25.07 makes it a criminal offense to violate specified provisions of a protective order.

The trial court's interpretation of the stalking statute to make unlawful and prohibit Suzanna from taking photographs at public events and public places improperly criminalizes protected speech. That the Constitution prohibits any law abridging freedom of speech is not debatable. U.S. Const. amend. I ("Congress shall make no law ... abridging the freedom of speech."). This guarantee of free speech, which was made applicable to the various states by the Due Process Clause of the Fourteenth Amendment, *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925), generally protects the free communication and receipt of ideas, opinions, and information. *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 390 (1969).

Although the guarantee of free speech is not absolute, the State may only proscribe communicative conduct (i.e., the communication of ideas, opinions, and information) that invades the substantial privacy interests of another in an essentially intolerable manner. *Cohen v. California*, 403 U.S. 15, 21 (1971). For example, threatening speech is not a protected expression, but a criminal statute that seeks to punish threats must "clearly distinguish between actionable or true threat and protected speech." *State v. Hanson*, 793 S.W.2d 270, 272 (Tex. App.—Waco 1990, no writ). "[W]here First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression." *Long*, 931 S.W.2d at 287.

"A statute is overbroad if it sweeps within its coverage speech or other conduct protected by the First Amendment." *Garcia v. State*, 212 S.W.3d 877, 887 (Tex. App.—Austin 2006, no pet.). "[A] claim that a statute is unconstitutional 'as applied' is a claim that the statute operates unconstitutionally with respect to the claimant because of his particular circumstances." *Scott v. State*, 322 S.W.3d 662, 677 (Tex. Crim. App. 2010), abrogated on other grounds by *Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014). To the extent the trial court held that the stalking statute makes Suzanna's photographing at public places unlawful, that statute is unconstitutional as applied to Suzanna. The stalking statute prohibits ***any*** conduct, including speech. Tex. Pen. Code Ann. §§ 42.072; 1.07 (1), (10) (prohibiting any conduct and defining conduct to include speech). And photography is a form of speech, the "purposeful creation of [which] is entitled the same First Amendment protection as the photographs and visual recordings themselves." *Ex parte Thompson*, 442 S.W.3d 325, 336-37 (Tex. Crim. App. 2014) ("[P]hotographs and visual recordings are inherently expressive, so there is no need to conduct a case-specific inquiry into whether these forms of expression convey a particularized message.").

Photographing for news gathering is no exception to free speech protection. *Connell v. Town of Hudson*, 733 F. Supp. 465, 469 (D.N.H. 1990) (accumulating cases and holding that news gathering is protected by the First

Amendment so the government cannot unreasonably interfere unless to prevent access to a place from which the general public is prohibited for essential safety purposes). And these First Amendment rights are especially applicable to Suzanna whose photographs are published in local newspapers and magazines. Exs. 1, 2, 3, 4, 6; 2RR67-70, 82, 85, 95-99.

But the trial court's protective order makes it potentially unlawful for Suzanna to even appear at local music venues, much less photograph performances and events at such venues, for fear that Hal (or any member of his family) might also contemporaneously visit the venue. If she is at a location, and he shows up after her, she potentially has to stop what she is dong and leave—or so a person of ordinary intelligence would think from reading the order. Even the trial court could not provide guidance as to what the "boundaries" of this order might be. *See* 2RR119-121 (advising Suzanna to leave anywhere she is if she sees Hal or anyone in his family). This is exactly the problem warned against with overbroad statutes that "inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Long*, 931 S.W.2d at 287-88. And even if Suzanna's warning to Hal not to "mess" with her actually occurred and was a threat, "the legislature may legitimately punish the threat, but it should not be permitted to hold someone's First Amendment rights forever hostage after he makes such a threat." *Id.* at 293-94. Because the trial court's

interpretation of the relevant statutes prohibited Suzanna's photography, it violated her First Amendment Rights. This Court should vacate this order.

**IV. The trial court erred in a number of discretionary rulings, which compounded, led to an unfair hearing and resulted in this restrictive order.**

The due process hearing was fraught with errors resulting in a lifetime of social stigma for Suzanna, as neither this protective order nor the social stigma attached to it expires. *See Finley v. Finley*, 02-11-00045-CV, 2015 WL 294012, at *2 (Tex. App.—Fort Worth Jan. 22, 2015, no pet.) (noting that "although [protective orders] may ultimately expire, the social stigma attached to them generally does not"); *In re Salgado*, 53 S.W.3d 752, 757-58 (Tex. App.—El Paso 2001, orig. proceeding) (noting the significant collateral legal repercussions and social stigma); *James v. Hubbard*, 21 S.W.3d 558, 560-61 (Tex. App.—San Antonio 2000, no pet.) (same). As outlined below, the trial court made a series of errors that independently require reversal by this court, and cumulatively exemplify the unfair proceedings Suzanna endured.

**A. The trial court erred in granting a protective order based on false testimony in violation of Suzanna's due process rights.**

The State presented and failed to correct Hal's false testimony that he obtained a restraining order against Suzanna in Nashville, Tennessee in 1997. 2RR14, 24, 27-28. This false testimony, along with the implausible allegations

Hal provided in his application and at the hearing, was the basis of the State's application for a protective order and key evidence on which the trial court relied in granting the Amended Order. But because the testimony was shown to be false at the due process hearing and before entry of the protective order, it was offered in violation of Suzanna's right to due process. This Court should vacate this Amended Order.

The "admission of false testimony could violate an applicant's due-process rights, even when the State was unaware at the time of trial that the testimony was false." *Ex Parte Chavez*, 371 S.W.3d 200, 204 (Tex. Crim. App. 2012) (citing *Ex Parte Chabot*, 300 S.W.3d 768, 772 (Tex. Crim. App. 2009)). Further, "[a] due-process violation may arise not only through false testimony specifically elicited by the State, but also by the State's failure to correct testimony it knows to be false." *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011). It is a due process violation just the same if the prosecutor should have recognized the misleading nature of the evidence, but did not actually know the evidence was false. *Id.* And while these standards have been applied to false testimony the State prosecuting attorney uses to prove a criminal offense that results in a criminal conviction, such standards are just as applicable here where the State used Hal's false testimony to prove the criminal offense of stalking which resulted in restrictions on Suzanna's liberties for her lifetime. *See Hunt v. State ex*

*rel. K.C.*, 03-11-00352-CV, 2012 WL 3793283, at *4 (Tex. App.—Austin Aug. 31, 2012, no pet.) (assuming, without deciding, that the principle that a defendant's due process rights may be violated if the State uses false testimony to obtain a conviction applies in the context of protective orders).

Hal claimed repeatedly that he obtained a prior "restraining order" against Suzanna. ICR8; 2RR14, 24, 27-28, 30, 33-34, 39. But Suzanna had never before been served with a restraining order. 2RR89. And the State offered that testimony despite many indications that the testimony was false. For example, in its Application for Protective Order, the State asserted that Suzanna had engaged in acts of stalking "to-wit" communicating a threat directly, through a person, or through a third-party to "*a person protected by an order*;" "going to or near the residence or place of employment or business of *a person protected by an order*;" going to or near the school of *a child protected under the order*; and "engaging in conduct directed specifically toward a person who is *a person protected by an order*." ICR8. The common claim in all those allegations is that stalking, communications, and conduct was directed to "a person protected by an order."

But Hal was not a person protected by any order, and the State had many indications that Hal's assertions otherwise were false. At the time of application for protective order, the State was required to attach or file a copy of

the prior restraining order with the court. Tex. Fam. Code Ann. § 82.008 ("An application for a protective order that is filed after a previously rendered protective order has expired must include a copy of the expired protective order attached to the application."). If such a copy was unavailable, the State was required to provide "a statement that the order is unavailable to the applicant and that a copy of the order will be filed with the court before the hearing on the application." *Id.* The State appeared to have been aware of its lack of a "restraining order" and this statutory requirement as it included such a statement in its application. *See* ICR6. Yet, the State never provided the trial court or Suzanna with a copy of this purported restraining order, and instead, provided a Nashville Police Department number. [10] ICR8.

Knowing it had no prior restraining order to offer into evidence, the State elicited testimony from Hal about Hal's 1997 "restraining order." 2RR14. For example, after Hal had already twice mentioned the alleged "anti-stalking law and restraining order in Nashville that was implemented on [his] my behalf" that "prohibited [Suzanna] from coming to [his] shows," *id.*, the State elicited the following testimony:

---

[10] This report, Nashville Police Department 97-53946, ICR8, was never offered or admitted into evidence. *See* 2RR48 (sustaining the State prosecuting attorney's hearsay objection to the content of the police report being read into evidence).

Q. Now, shows -- how do you handle shows if you see her there?

A. Well, I try to prohibit her from being there. In Nashville I could that.

Q. How is that?

A. Very easily. I had this restraining order. I would just take pictures of her to the police and say don't allow this person in the building please. When I moved to Texas that didn't really apply for that period

of time so we were back in that same kind of place.

*Id.*

It was not until cross-examination that Hal finally admitted that what he had been referring to as a restraining order was in fact a police report. 2RR27. And at no point did the State correct Hal's false testimony after conceding to the trial court that the State, too, only had a police report that Hal claimed was a restraining order. *See id.*

Q. When you say you received a restraining order in Nashville, Tennessee you testified that was in 1997, where was that restraining order issued?

A. In Davidson County.

Q. Do you have a copy of that?

A. I do.

Q. May I see that?

A. I don't have it on me at this point in time.

MS. MORRIS: Your Honor, may I receive the restraining

order? What I have been provided by the district attorney's

office is a police report.

THE COURT: Do you have it, Mr. Robinson?

MR. ROBINSON: No, Your Honor, just the police report.

THE COURT: All right. Let's move on.

Q. (MS. MORRIS) So is what you provided to the -- what the district

attorney has in his possession is that what you're referring to as

restraining order?

A. Yes.

*Id.*

Thus, the evidentiary record indisputably shows that the State never had evidence that Hal ever obtained a restraining/protective order against Suzanna in Nashville, Tennessee as the State alleged in its application for a protective order on Hal's behalf. Further, the State elicited and failed to correct Hal's repeated

false testimony that he had a prior restraining order against Suzanna.  Yet, this false testimony was offered to support allegations of stalking, specifically that Suzanna knew Hal would be threatened by her presence, that Hal was threatened by her presence, and that a reasonable person would be threatened by the presence of someone already ordered by a court to stay away.  This testimony was false, material, and violated Suzanna's due process rights.  For this reason, this Court should vacate the Amended Order.

### B. The trial court further erred in granting relief—specifically, an order with a lifetime duration—that was not requested in the application for protective order.

The trial court abused its discretion in entering an order that did not conform to the pleadings as required by Tex. R. Civ. P. 301.  Specifically, the trial court erred in entering the stalking protective order under Tex. Code. Crim. Proc. §7A for Suzanna's lifetime when a family violence protective order was requested in the State's application for protective order.  ICR4-7.  Rule 301 stands for the basic idea that "a trial court may not grant relief to a party in the absence of pleadings to support that relief."  *Moreno v. Moore*, 897 S.W.2d 439, 442 (Tex. App.—Corpus Christi 1995, no writ) (citing *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *see also* Tex. R. Civ. P. 301.  "The petition must give fair and adequate notice of the claims being asserted, and, if the reviewing court cannot reasonably infer that the petition contains a given claim, then the court must

conclude the petition does not contain such a claim, even under a liberal construction." *Teel v. Shifflett*, 309 S.W.3d 597, 602 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). "[T]he part of a judgment… which the pleadings do not support is considered void." *Moreno*, 897 S.W.2d at 442.

The State's application for a family violence protective order did not conform to the stalking protective order which should be considered void. The distinction between a protective order under the Texas Family Code and one under the Code of Criminal Procedure is not a distinction without a difference. The statutes differ in the allegations to be proven, the immediacy of the threats alleged, and the duration of the protective order.

Contrary to the trial court's conclusion that the State prosecuting attorney had just "miscited" the statute in its application, that "miscited" statute was not the only part of the State's application requesting a family violence protective order instead of a stalking protective order. 2RR6-9. The State's application explicitly referenced the Family Code multiple times in stating that "Applicant requests the Honorable Court issue a Protective Order pursuant to Chapter 85 of the Texas Family Code." ICR4. That Chapter provides that for a court to issue a protective order, it must first find that family violence occurred and family violence is likely to occur in the future. Tex. Fam. Code. §85.001. Family violence is defined by civil statute in the Family Code—not in the Texas Penal Code— and requires that

the complainant and the accused be in a family or dating relationship.[11]  *See id.* §§ 85.001, 71.004, 71.003.  The State's application also requested relief that would only logically apply to those in a family or dating relationship, such as requesting that "temporary support and visitation be set," presumably referring to child support and parental visitation with a child.  ICR5.

The State's application expressly alleged family violence and stalking, but did not allege a familial relationship.  For example, the application alleged that Hal and Suzanna had the relationship of "Stalker", and that Hal "was indeed physically harmed[,] suffered bodily injury[,] and was assaulted by Respondent." ICR6.  The State's alternative allegation was that Suzanna repeatedly threatened Hal, placing him "in reasonable fear of *imminent* physical harm."  *Id.* (emphasis added). That physical harm be imminent is a requirement of a family violence protective order, but is not a requirement of the criminal offense of stalking.  *See* Tex. Fam. Code § 71.004(1) (defining "family violence" to include a "threat that reasonably places the member in fear of *imminent* physical harm, bodily injury, assault, or sexual assault) (emphasis added); *see also Molett v. State*, 05-08-00728-CR, 2009 WL 824761, at *10 (Tex. App.—Dallas Mar. 31, 2009, pet. ref'd)

---

[11] While family violence can constitute a criminal offense, that offense is Assault and requires proof of the elements of assault with the victim being a member of the actor's family, as family is defined in the Texas Family Code.  Tex. Pen. Code Ann. § 22.01 (providing that misdemeanor assault is enhanced to a third degree felony if the offense is committed against a family member as defined in Tex. Fam. Code §§71.0021(b); 71.003; or 71.005).

(holding that *imminent* bodily injury or death is not a required element for stalking criminal offense). Thus, the inclusion of these allegations shows that the relief the State requested was for family violence,[12] not stalking.

And by entering a stalking protective order when a family violence order was requested, the trial court impermissibly entered a lifetime order when Suzanna had no notice that an order longer than two years was sought. The default duration for a family violence protective order is two years. *See* Tex. Fam. Code §85.025(a)(1) (providing that the duration is "not to exceed two years"). While a court may render a protective order with a duration exceeding two years, to do so, the court must first find that the respondent caused serious bodily injury or was the subject of two or more protective orders based on family violence, and that family violence is likely to occur in the future. *Id.* at § 85.025(a-1). In contrast, a stalking protective order "may be effective for the duration of the lives of the offender and victim or for any shorter period stated in the order." Tex. Crim. Proc. Code §7A.03. "If a period is not stated in the order, the order is effective until the second anniversary of the date the order was issued." *Id.* Thus, the effect of the

---

[12] The State also prayed for relief available to applicants seeking family violence protective orders that wouldn't be necessary to parties whose only relationship is that of "stalker." See Tex. Fam. Code §85.021 (permitting provisions regarding encumbering property and removing children); ICR7 (requesting, for example, that Suzanna not be permitted to remove children from Applicant or the county, interfere with property owned or leased by Applicant and Respondent). This, too, shows that the State applied for a family violence protective order.

distinction between a request for a family violence protective order and a stalking protective order is the difference between two years and a lifetime.

And that difference has permanent repercussions considering the State's application never referenced the criminal statutes under which this Amended Order was granted. *See* ICR4-6. Further, the State did not request a stalking protective order from the court until the hearing. *See* 2RR9. Moreover, the State never so much as mentioned that it sought a protective order than endured for Suzanna's lifetime until after both sides had rested, when the trial court refused to entertain any protestations from Suzanna's counsel. 2RR116-117. Yet, without giving any notice to Suzanna that it intended to seek a protective order under a different statute which permitted more severe restrictions, the State prepared and presented to the court and Suzanna's counsel for the first time at the hearing, a lifetime stalking protective order under Tex. Crim. Proc. Code §7A. 2RR9. Thus, this failure to comply the with the civil rules had a material effect on the outcome of this case. This Court should vacate this protective order because it granted relief not requested and did not conform to the pleadings.

## C. The trial court erred in excluding testimony relevant to Hal's allegations.

The trial court improperly excluded testimony regarding facts and circumstances relevant to Hal's allegations as too remote and relied on evidence

not in the record. "In a prosecution for stalking, each party may offer testimony as to all relevant facts and circumstances that would aid the trier of fact in determining whether the actor's conduct would cause a reasonable person to experience a fear…including the facts and circumstances surrounding any existing or previous relationship between the actor and the alleged victim." Tex. Crim. Proc. Code § 38.46. This provision was added to ensure that the fact finder has a clear picture of why a certain course of conduct cause the alleged victim fear. Senate Bill 82 Bill Analysis Acts 2011, 82nd Leg., ch. 591 (S.B. 82), § 3, eff. Sept. 1, 2011.

In this case, where the trial court based its order on Hal's testimony that, for decades, Suzanna was "showing up, including other cities and places, where [Hal] is," II RR 121, any testimony about the parties' interactions over the years would be relevant. Over those decades, Hal had had multiple wives who he claims witnessed Suzanna's behavior. 2RR14-16, 22-23. Thus, the trial court's interjection that Suzanna's counsel was asking too many questions about Hal's wives improperly directed the attorney to limit questioning to Hal's current wife's involvement in "the past year or so." 2RRR22. Likewise, the trial court's frequent admonitions to Suzanna's counsel to "move on" effectively excluded testimony, especially when Hal boldly asserted that he was "not going to answer [her] question." *Id.* at 28, 32, 34, 104. And because of those exclusions, this record is

silent as to what unlawful conduct Hal claims Suzanna has engaged in during the 16-year period of her alleged stalking. *See id.* at 35, 42.

Hal was not permitted to testify as to what contact Suzanna had with him since 1997. *Id.*at 35.

> Q. So what contact has she had with you with? What contact has she made with you since then [1997]?
>
> A. Since then?
>
> Q. Uh-huh.
>
> A. Constant presence I guess. I mean, I don't know. I don't know how to describe this kind of psychological warfare because I don't practice it. If somebody said stay away from me I stay away from that person. I don't understand this concept legally or otherwise why someone would do this for 16 years.
>
> MS. MORRIS: Objection, nonresponsive.
>
> THE COURT: Overruled.

*Id.*at 35.

Nor was Hal permitted to testify as to how he claims Suzanna has threatened him for the past 16 years.

> Q. Now, beginning in 1997 what had she done to threaten -- by she I'm referring --

MR. ROBINSON: Your Honor, objection. Asked to asked and answered.

Q. (MS. MORRIS) What had she done to threaten you?

THE COURT: Sustained. Next question.

MS. MORRIS: Your Honor, I don't believe he has answered --

THE COURT: I have heard everything about 1997 and we don't seem to be moving forward. I assume at some point we're going to be moving forward to this particular time period that we're talking about. I have no authority over what happened. I understand the need to discuss some of the history, so I'm giving you some latitude there. But we're talking about what has happened here, I believe, in the last year, year-and-a-half or so.

*Id.*at 42.

The trial court erred in excluding relevant testimony.

**D.    The trial court erred in concluding that its order was necessary.**

Even had the trial court's finding of stalking been based on credible evidence that was legally and factually sufficient, the trial court still erred in finding that the provisions of the entered Amended Order were necessary and

appropriate to prevent or reduce the likelihood of future harm to Hal or a member of his family or household. 3SCR7-10. Under the Amended Order, Suzanna is "[p]rohibited from taking photos or images of applicant, applicant's children, spouse, grandchildren, or anyone in applicant's household." 3SCR8. Suzanna is also prohibited from going to or near residence, businesses, schools, or child-care facilities for Hal and his family, including his grandchildren. 3SCR8. Additionally, Suzanna is prohibited from being within 1,000 feet of any venue where Hal is performing beginning three hours before the performance until three hours after the performance. *Id.* Nor can Suzanna, living in a rural part of Wimberley, own or possess a firearm. *Id.* And all of these provisions endure for Suzanna's lifetime based on her run-ins with Hal due, for example, to her work as a photojournalist and an alleged warning to Hal that if he messed with her, he would be sorry. There was no evidence of unlawful conduct constituting the criminal offense of stalking.

Because of the small size of Wimberley, such an order prevents Suzanna from going to the central commercial area of town to conduct any business. This is so despite the trial court's reduction of the stay-away provisions from 1,000 yards in the original order to 1,000 feet in the Amended Order. *See* Appendices 2, 4. Thus, even the provisions of the *Amended Order* are restrictive and incongruous as compared to the evidence supporting the trial court findings.

*In re Wean*, 03-10-00383-CV, 2010 WL 3431708, at \*8 (Tex. App.—Austin Aug. 31, 2010, no pet.) (concluding that it was an abuse of discretion for Judge Stephens to issue a final protective order and noting the incongruity between the scarcity of evidence of family violence and the significance of the requirements placed on respondent by the final protective order).

This Court has the power to correct and modify the trial court's judgment. *See* Tex. R. App. P. 43.2(b). Should this improvidently granted protective order stand (which it should not), this Court should revise the provisions of the order so as not to infringe on Suzanna's liberties for a lifetime duration.

## CONCLUSION AND PRAYER

For these reasons, this Court should vacate this protective order. There is no evidence to support the order, and the order is unconstitutional, so vacating the order is the desired relief. As alternative relief, this Court should remand for a new hearing and modify the restrictions of this protective order pending re-hearing.

Respectfully submitted,

By:  */s/ Mysha Lubke*
Mysha Lubke
State Bar No. 24083423
mysha.lubke@bakerbotts.com
BAKER BOTTS L.L.P.
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
Telephone:  (512) 322-2500
Facsimile:   (512) 322-2501

ATTORNEY FOR APPELLANT
SUZANNA ECKCHUM

# CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3), I certify that this brief contains no more than 12,564 words, excluding the parts of the brief exempted by Rule 9.4(i)(l).

*/ s / Mysha Lubke*
Mysha Lubke

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served by electronic mail and by fax on this 24th day of August, 2015:

***Counsel for the State of Texas for the Protection of Hal Ketchum:***

The Honorable Jennifer A. Tharp
Comal County Criminal District Attorney
150 North Seguin, Suite 370
New Braunfels, Texas 78130

*/ s / Mysha Lubke*
Mysha Lubke

# APPENDIX

2005 Tennessee Laws Pub. Ch. 381 (S.B. 645)........................................Appendix 1

Trial Court's Amendments the Stalking Protective Order ........................Appendix 2

Map Showing 1,000 feet radius from Katherine Anne Porter
School in Wimberley, Texas....................................................................Appendix 3

Appealable Amended Stalking Protective Order.....................................Appendix 4

# APPENDIX 1

## CHAPTER NO. 381

### SENATE BILL NO.  645

**By Hagood, McLeary, Ketron, Burks, Curtis S. Person, Jr., Beavers, Black, Bryson, Burchett, Chism, Cohen, Cooper, Crowe, Crutchfield, Finney, Ford, Fowler, Harper, Haynes, Henry, Herron, Jackson, Kilby, Kurita, Kyle, McNally, Miller, Norris, Ramsey, Southerland, Tracy, Williams, Mr. Speaker Wilder**

**Substituted for:  House Bill No.  460**

**By Sontany, Sherry Jones, Eldridge, Todd, Langster, Pruitt, Moore, Hackworth, Harmon, Bone, Shaw, West, Cobb, Ferguson, Fraley, Davidson, Curtiss, Fowlkes, Mike Turner, Hood, Odom, Armstrong, Tindell, Larry Turner, Shepard, Tidwell, Litz, Buck, Maddox, Favors, Harwell, Winningham, Lois DeBerry, Vaughn, Pinion, Brown, Marrero, Coleman, DuBois, Gresham**

AN ACT to amend Tennessee Code Annotated, Title 36, Chapter 3, Part 6; Title  39, Chapter 13, Part 5 and Title 39, Chapter 17, Part 3, relative to orders of protection and the scope thereof.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1.  Tennessee Code Annotated, Section 36-3-601, is amended by deleting items (3), (5) and (7) and substituting instead the following:

(3) "Domestic abuse" means committing abuse against a victim as defined in subsection (8);

(5) "Petitioner" means the person alleging domestic abuse, sexual assault or stalking in a petition for an order for protection;

(7) "Respondent" means the person alleged to have abused, stalked or sexually assaulted another in a petition for an order for protection;

SECTION 2.  Tennessee Code Annotated, Section 36-3-601, is amended by adding the following new numbered items:

( ) "Abuse" means inflicting or attempting to inflict physical injury on an adult or minor by other than accidental means, placing an adult or minor in fear of physical harm, physical restraint, or malicious damage to the personal property of the abused party;

( ) "Stalking victim" means any person, regardless of the relationship with the perpetrator, who has been subjected to, threatened with or placed in fear of the offense of stalking as defined in § 39-17-315;

( ) "Sexual assault victim" means any person, regardless of the relationship with the perpetrator, who has been subjected to, threatened with or placed in fear of any form of rape, as defined in §§ 39-13-502, 39-13-503, 39-13-506 or 39-13-522, or sexual battery as defined in §§ 39-13-504, 39-13-505, or 39-13-527;

SECTION 3. Tennessee Code Annotated, Section 36-3-602, is amended by deleting subsections (a) and (c) in their entirety and substituting instead the following:

(a)  Any victim who has been subjected to, or threatened with or placed in fear of, domestic abuse, stalking, or sexual assault may seek a relief under this part by filing a sworn petition alleging such domestic abuse, stalking, or sexual assault by the respondent.

(c)  Venue for a petition for an order of protection and all other matters relating to orders of protection shall be in the county where the respondent resides or the county in which the domestic abuse, stalking or sexual assault occurred.  If the respondent is not a resident of Tennessee, the petition may be filed in the county where the petitioner resides."

SECTION 4. Tennessee Code Annotated, Section 36-3-605, is amended by deleting subsections (a) and (b) in their entirety and substituting instead the following:

(a)  Upon the filing of a petition under this part, the courts may immediately, for good cause shown, issue an ex parte order of protection. An immediate and present danger of abuse to the petitioner shall constitute good cause for purposes of this section.

(b)  Within fifteen (15) days of service of such order on the respondent under this part, a hearing shall be held, at which time the court shall either dissolve any ex parte order which has been issued, or shall, if the petitioner has proved the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year unless a further hearing on the continuation of such order is requested by the respondent or the petitioner; in which case, on proper showing of cause, such order may be continued for a further definite period of one (1) year after which time a further hearing must be held for any subsequent one-year period. Any ex parte order of protection shall be in effect until the time of the hearing and, if the hearing is held within fifteen (15) days of service of such order, the ex parte order shall continue in effect until the entry of any subsequent order of protection issued pursuant to § 36-3-609. If no ex parte order of protection has been issued as of the time of the hearing, and the petitioner has proven the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence, the court may, at that time, issue an order of protection for a definite period of time, not to exceed one (1) year.

SECTION 5. Tennessee Code Annotated, Section 36-3-606, is amended by deleting from subsection (a) the following language:

(a)  A protection order granted under this part to protect the petitioner from domestic abuse may include, but is not limited to:

(1) Directing the respondent to refrain from committing domestic abuse or threatening to commit domestic abuse against the petitioner or the petitioner's minor children;

and substituting instead the following:

     (a)  A protection order granted under this part to protect the petitioner from domestic abuse, stalking or sexual assault may include, but is not limited to:

     (1)    Directing the respondent to refrain from committing domestic abuse, stalking or sexual assault or threatening to commit domestic abuse, stalking or sexual assault against the petitioner or the petitioner's minor children;

SECTION 6.  Tennessee Code Annotated, Section 36-3-613, is amended by deleting the section in its entirety and substituting instead the following:

     (a)  The petitioner's right to relief under this part is not affected by petitioner's leaving the residence or household to avoid domestic abuse, stalking or sexual assault.

     (b) The petitioner's right to relief under this part is not affected by use of such physical force against the respondent as is reasonably believed to be necessary to defend the petitioner or another from imminent physical injury, domestic abuse, or sexual assault.

SECTION 7. This act shall take effect July 1, 2005, the public welfare requiring it.

**PASSED:  May 24, 2005**

JOHN S. WILDER
*SPEAKER OF THE SENATE*

JIMMY NAIFEH, *SPEAKER*
*HOUSE OF REPRESENTATIVES*

**APPROVED this**    **9**th    **day of**    **June**    **2005**

PHIL BREDESEN, GOVERNOR

# APPENDIX 2

CAUSE NO. C2014-1690C

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE COUTY COURT# 2 |
| FOR THE PROTECTION OF | | |
| HAL KETCHUM | | |
| APPLICANT | § | COURT OF |
| v. | | |
| SUZANNA EKCHUM, AKA | | |
| SUSAN ECKHERT | | |
| RESPONDENT | § | COMAL COUNTY, TEXAS |

## **AMENDED STALKING PROTECTIVE ORDER**

On the 16th day of JANUARY, 2015, came to be heard the Application of HAL KETCHUM for a Protective Order.

__x_  HAL KETCHUM appeared in person and announced ready.
__x_  SUZANNA EKCHUM, AKA SUSAN ECKHERT appeared in person and and announced ready.
___  SUZANNA EKCHUM, AKA SUSAN ECKHERT appeared by his attorney, _____,and announced ready.
___  SUZANNA EKCHUM, AKA SUSAN ECKHERT did not appear, although duly and properly served noticed by Writ.

The Court, having considered the pleadings and heard the evidence and the arguments, finds that all necessary, prerequisites of the law have been legally satisfied and that this Court has jurisdiction over the parties and the subject matter of this cause.

The Court finds there are reasonable grounds to believe that the applicant is the victim stalking by respondent and the following orders are necessary for the safety, welfare, and protection of HAL KETCHUM, and other members of the families or household who are affected by this suit.

**IT IS THEREFORE ORDERED** that Respondent, SUZANNA EKCHUM, AKA SUSAN ECKHERT be and hereby is prohibited from:

(1)  Committing acts of stalking;

(2)  Communicating:

(a)  directly with a person protected by an order or a member of the family or household of a person protected by an order, in a threatening or harassing manner;

(b)  a threat through any person to a person protected by an order, or a member of the family or household of a person protected by an order; and

(c)  in any manner, including through a third party, with a person protected by an order, except through the party's attorney or a person appointed by the court;

(3)     Going to or near the residence or place of employment or business of a person protected by an order or a member of the family or household of a person protected by an order;

(4)     Going to or near the residence, child-care facility, or school a child or grandchild protected under the order attends or in which the child or grandchild normally resides;

(5)     Going within 1,000 ~~yards~~feet of any venue where applicant is performing during the following times: during applicant's performance, three (3) hours prior to applicant's performance, and three (3) hours immediately after applicant's performance;

(6)     Prohibited from taking photos or images of applicant, applicant's children, spouse, grandchildren, or anyone in applicant's household;

(7)     Engaging in conduct directed specifically toward a person who is a person protected by an order or a member of the family or household of a person protected by an order, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the person;

**GOING WITHIN 1000 ~~YARDS~~FEET OF THE FOLLOWING PERSONS OR LOCATIONS:**

**HAL KETCHUM**
**ROSE KETCHUM**
**ANDREA KETCHUM**

**RESIDENCE: 115 Fischer Store RD, Fischer TX 78623, for as long as applicant or protected persons reside at that location, or any future place of residence**

**WORK: or any current or future place of employment known by SUZANNA EKCHUM, AKA SUSAN ECKHERT, as long as applicant or protected persons work at that location.**

**SCHOOL: Katherine Ann Porter School, 515 FM 2325 Wimberley, TX, 78676 or any future school facility, as long as protected person attends that school**

IT IS ORDERED that any license or permit to carry any concealed hand gun for Respondent is suspended for her lifetime.

THE CLERK IS ORDERED to send a copy of this order to: The Chief of Police of the City of New Braunfels, Comal County, Texas; the Sheriff of Comal County, Texas; the Texas Department of Public Safety, Austin, Texas; any school or child care facility included in this Order.

**"A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500.00 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH."**

**"NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THE ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER."**

**"A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000.00 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH. AN ACT THAT RESULTS IN STALKING MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS."**

**"IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION."**

All said Protective Orders contained herein shall continue in full force and effect until the lifetime of either party (HAL KETCHUM or SUZANNA EKCHUM a.k.a. SUSAN ECKHERT).

SIGNED this ~~22nd~~7th day of ~~January~~April, 2015.

_____
JUDGE PRESIDING

Document comparison by Workshare Compare on Monday, August 03, 2015
2:41:08 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://BBDMS/Active/20289153/1 |
| Description | #20289153v1<Active> - Stalking PO (word doc) |
| Document 2 ID | interwovenSite://BBDMS/Active/20289152/1 |
| Description | #20289152v1<Active> - Amended Stalking PO (word doc) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 11 |
| Deletions | 9 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 20 |

# APPENDIX 3

# 1000 Feet from Katherine Ann Porter School



Free Map Tools Radius

◇ Polygon

# APPENDIX 4

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE COUTY COURT # 2 |
| FOR THE PROTECTION OF | | |
| **HAL KETCHUM** | | |
| APPLICANT | § | COURT OF |
| V. | | |
| **SUZANNA EKCHUM, AKA** | | |
| **SUSAN ECKHERT** | | |
| RESPONDENT | § | COMAL COUNTY, TEXAS |

## AMENDED STALKING PROTECTIVE ORDER

On the 16TH day of JANUARY, 2015, came to be heard the Application of HAL KETCHUM for a Protective Order.

\_\_\_\_ HAL KETCHUM appeared in person and announced ready.
\_\_\_\_ SUZANNA EKCHUM, AKA SUSAN ECKHERT appeared in person and announced ready.
\_\_\_\_ SUZANNA EKCHUM, AKA SUSAN ECKHERT appeared by his attorney,
_____ , and announced ready.
\_\_\_\_ SUZANNA EKCHUM, AKA SUSAN ECKHERT did not appear, although duly and properly served noticed by Writ.

The Court, having considered the pleadings and heard the evidence and the arguments, finds that all necessary, prerequisites of the law have been legally satisfied and that this Court has jurisdiction over the parties and the subject matter of this cause.

The Court finds there are reasonable grounds to believe that the applicant is the victim stalking by respondent and the following orders are necessary for the safety, welfare, and protection of HAL KETCHUM, and other members of the families or household who are affected by this suit.

**IT IS THEREFORE ORDERED** that Respondent, SUZANNA EKCHUM, AKA SUSAN ECKHERT be and hereby is prohibited from:

(1) Committing acts of stalking;

(2) Communicating:

    (a) directly with a person protected by an order or a member of the family or household of a person protected by an order, in a threatening or harassing manner;
    (b) a threat through any person to a person protected by an order, or a member of the family or household of a person protected by an order; and
    (c) in any manner, including through a third party, with a person protected by an order, except through the party's attorney or a person appointed by the court;

(3) Going to or near the residence or place of employment or business of a person protected by an order or a member of the family or household of a person protected by an order;

(4) Going to or near the residence, child-care facility, or school a child or grandchild protected under the order attends or in which the child or grandchild normally resides;

(5)     Going within 1,000 feet of any venue where applicant is performing during the following times: during applicant's performance, three (3) hours prior to applicant's performance, and three (3) hours immediately after applicant's performance;

(6)     Prohibited from taking photos or images of applicant, applicant's children, spouse, grandchildren, or anyone in applicant's household;

(7)     Engaging in conduct directed specifically toward a person who is a person protected by an order or a member of the family or household of a person protected by an order, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the person;

GOING WITHIN 1000 FEET OF THE FOLLOWING PERSONS OR LOCATIONS:

HAL KETCHUM
ROSE KETCHUM
ANDREA KETCHUM

RESIDENCE: 115 Fischer Store RD, Fischer TX 78623, for as long as applicant or protected persons reside at that location, or any future place of residence

WORK: any current or future place of employment known by SUZANNA EKCHUM, AKA SUSAN ECKHERT, as long as applicant or protected persons work at that location

SCHOOL: Katherine Ann Porter School, 515 FM 2325 Wimberley, TX, 78676 or any future school facility, as long as protected person attends that school

IT IS ORDERED that any license or permit to carry any concealed hand gun for Respondent is suspended for her lifetime.

THE CLERK IS ORDERED to send a copy of this order to: The Chief of Police of the City of New Braunfels, Comal County, Texas; the Sheriff of Comal County, Texas; the Texas Department of Public Safety, Austin, Texas; any school or child care facility included in this Order.

"A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500.00 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH."

"NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THE ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER."

"A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000.00 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH. AN ACT THAT RESULTS IN STALKING MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS."

"IT IS UNLAWFUL FOR ANY PERSON WHO IS SUBJECT TO A PROTECTIVE ORDER TO POSSESS A FIREARM OR AMMUNITION."

All said Protective Orders contained herein shall continue in full force and effect until the lifetime of either party (HAL KETCHUM or SUZANNA EKCHUM a.k.a. SUSAN ECKHERT).

SIGNED this _____ day of _____, 2015

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND CONTENT:

_____
NICK ROBINSON
Assistant Criminal District Attorney
Attorney For The State
SBN: 24067844


_____
HAL KETCHUM,
APPLICANT


_____
SUZANNA EKCHUM, AKA SUSAN ECKHERT
RESPONDENT


_____
MYSHA LUBKE
ATTORNEY FOR RESPONDENT

9